{¶ 1} Defendant-appellant, Garnette Redus, admits that she has not made a mortgage payment since 1996, yet claims that the trial erred in entering a judgment of foreclosure and sale. We disagree, and affirm the trial court's judgment.
 {¶ 2} The record reflects that on August 18, 1977, Redus and her now deceased husband signed a promissory note in the amount of $160,000 with the First Bank National Association. The note provided for monthly payments of $1,211.69 and an interest rate of 8.25% per annum. Along with the note, Redus and her husband executed a mortgage deed, which was subsequently filed with the Cuyahoga County Recorder's office. Ten years later, in 1987, Redus and her husband signed a promissory note in the amount of $130,000 and a mortgage securing the note with the First Bank National Association. That note provided for monthly payments of $1,582.36 with an interest rate of 12% per annum.
 {¶ 3} In March 1990, First Bank National Association was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed as its receiver. In 1996, the FDIC sold plaintiff-appellee Liberty Savings Bank a batch of loans which included the $160,000 note and mortgage signed by the Reduses. Seven or eight payments were made to Liberty on behalf of the Reduses before the payments stopped in September of 1996. As of September 17, 1996, the amount due for the unpaid principal on the note was over $100,000. *Page 4 
 {¶ 4} The record reflects that although the FDIC intended to sell the $160,000 note and mortgage executed by the Reduses to Liberty Bank in 1996, it inadvertently endorsed the $130,000 note signed by the Reduses to Liberty. In December of 1999, after an investigation, the FDIC concluded that Liberty had, in fact, purchased the $160,000 note and mortgage in 1996. At the FDIC's request, Liberty endorsed the $130,000 note back to the FDIC and later, on August 9, 2001, the FDIC endorsed the $160,000 note and mortgage to Liberty. The mortgage assignment was filed with the Cuyahoga County Recorder on August 16, 2001.
 {¶ 5} In March of 2000, National City Bank instituted a foreclosure action in the Cuyahoga County Common Pleas Court against the Reduses.National City Bank v. Redus, Case No. CV-402876. On November 30, 2000, after receiving the FDIC's conclusion regarding the rightful ownership of the $160,000 loan, but prior to securing the assignment from the FDIC, Liberty sought to intervene in Case No. CV-402876. The court granted Liberty's motion to intervene, and Liberty filed an answer, counterclaim, and crossclaim seeking foreclosure. Redus subsequently sought sanctions against Liberty, claiming that Liberty had committed a fraud upon the court in seeking to intervene when it had no interest in the property. The trial court denied Redus's motion as untimely filed, but found that "even if the request for sanctions was timely filed, the actions of Liberty Savings Bank in this case would not lead to the imposition *Page 5 
of sanctions." Subsequently, National City dismissed its complaint with prejudice, Liberty dismissed its counterclaim and crossclaim without prejudice, and the case was dismissed without prejudice.
 {¶ 6} On May 21, 2002, Liberty filed this foreclosure action against Redus. Plaintiff-appellee EMC Mortgage Corporation (EMC) was subsequently substituted as plaintiff, because on July 17, 2002, Liberty sold the note and assigned the $160,000 mortgage to EMC. The assignment and transfer of the $160,000 note and mortgage to EMC was subsequently recorded in the Cuyahoga County Recorder's office.
 {¶ 7} Redus answered Liberty's complaint and asserted counterclaims against Liberty for abuse of process, defamation, and intentional infliction of emotional distress. The gist of Redus's counterclaims was that Liberty had no legal or equitable interest in the $160,000 note and mortgage on November 30, 2000, when it sought to intervene in Case No. CV-402876.
 {¶ 8} The trial court subsequently granted Liberty's and EMC's motions for summary judgment and denied Redus's motion for summary judgment. The court rendered judgment in favor of Liberty on Redus's counterclaims against it. It also rendered judgment in favor of EMC and against Redus in the amount of $100,345.80 plus interest thereon at 8.25% per annum from September 1, 1996, and entered a judgment of foreclosure and order of sale. Redus now appeals and *Page 6 
asserts eight assignments of error, which are set forth in their entirety in the appendix.
I. Summary Judgment Issues
 {¶ 9} In her first, second, third, seventh, and eighth assignments of error, Redus challenges the trial court's ruling on the motions for summary judgment.
 {¶ 10} Civ. R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ. R. 56(C). Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 11} Redus contends that the trial court erred in rendering summary judgment for Liberty and EMC because there was no proof that Liberty, and then EMC, were the owners of the $160,000 note and mortgage she executed, and therefore, they had no right to foreclose upon the same. Redus's arguments are specious.
 {¶ 12} The evidence in the record conclusively establishes that EMC is the current owner of the $160,000 note. Redus and her husband signed a note and *Page 7 
mortgage in August of 1977. The note and mortgage were transferred to the FDIC when First Bank National Association went into receivership. The FDIC sold the $160,000 note and mortgage to Liberty in 1996, and a proper assignment of the mortgage is of record in the Cuyahoga County Recorder's office. In 2002, the note and mortgage in question were sold to EMC. The assignment and transfer of the $160,000 note and mortgage to EMC was properly recorded with the Cuyahoga County Recorder.
 {¶ 13} Simply stated, Redus produced no evidence to raise any genuine issue of material fact as to whether EMC is the current owner of the note and assignee of the mortgage. The only evidence by Redus shows that there may have been a mistake in listing the original principal amount of the loan as $130,000, rather than $160,000, when the FDIC sold the loan and mortgage to Liberty in 1996. This mistake does not raise a material issue regarding ownership of the $160,000 note, because all of the terms in the sale documents (the monthly payment amount of $1,211.69, the interest rate of 8.25% per annum, and the outstanding principal balance of approximately $100,000-none of which match with the $130,000 note) demonstrate that the FDIC sold the $160,000 note and, more importantly, all of the parties to the sale agree, as shown by the assignments, that the $160,000 note was sold to Liberty and then to EMC. EMC's ownership of the note and mortgage is further demonstrated by the fact that, despite Redus's 10-year default on the note, no one besides Liberty, *Page 8 
and then EMC, attempted to collect on the note. In short, the record only supports one conclusion: that EMC is the rightful owner of the $160,000 note and is entitled to foreclose on that note.
 {¶ 14} Likewise, the record is clear that Liberty had an interest in the property as of November 30, 2000, when it moved to intervene in Case No. CV-402876. The tort of abuse of process requires a showing that: 1) a legal proceeding has been set in motion in proper form and with proper cause; 2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and 3) direct damage has resulted from the wrongful use of process. Yaklevich v. Kemp, Schaeffer Rowe Co. (1994), 68 Ohio St.3d 294, paragraph one of the syllabus. Civ. R. 24(A)(2) permits intervention when a movant claims an interest in the property that is the subject of the action. Because Liberty had an interest in the property, as evidenced by the FDIC's advisement that Liberty had purchased the $160,000 note and mortgage in 1996, Liberty did not "pervert" Case No. CV-402876 by intervening to protect its interest.
 {¶ 15} Accordingly, the trial court did not err in denying Redus's motion for summary judgment and granting summary judgment to Liberty and EMC. Appellant's first, second, third, seventh, and eighth assignments of error are overruled.
 II. Redus's Motion to Amend Her Complaint *Page 9 
 {¶ 16} After discovery was closed, Redus filed a motion to amend her complaint to assert an additional affirmative defense that the note was altered, relieving her from her obligations under the note. The trial court denied Redus's late attempt to make such a defense. In her fourth assignment of error, Redus argues that the trial court erred in denying her motion.
 {¶ 17} We review a trial court's ruling denying a motion to amend a complaint for abuse of discretion. Cleveland Elec. Illum. Co. v.Wilmington Steel Products, Inc. (1991), 60 Ohio St.3d 120, 122. The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 18} The trial court did not abuse its discretion in denying Redus's motion to amend, because she had no factual or legal support for the affirmative defense.
 {¶ 19} On August 17, 1977, the Reduses executed and delivered to First Bank a promissory note in the amount of $160,000, plus interest. On the same day, the Reduses executed and delivered to First Bank a mortgage securing the payment of the $160,000 note by pledging the property as security for payment of the $160,000. In her motion to amend, Redus claimed that the $160,000 note was materially altered because the address of the property pledged as security by the Reduses in the mortgage was added to the note sometime after they delivered it to First Bank. *Page 10 
 {¶ 20} Under R.C. 1303.43, "any alteration of an instrument is material which changes the contract of any party thereto in any respect." Here, there was no alteration to the substance of the note, nor even an allegation by Redus that any material term had been altered. The only alleged "alteration" to the note was on a copy of the note, where someone had written in the Reduses' address in the lower left hand portion of the note. Clearly, the addition on the note of the address of the real property offered as security in the mortgage for payment of the note did not change any of the terms and obligations of the parties to the note. Since there is no question as to what Redus contractually obligated herself to do, i.e., make payments on the note, the alleged alteration is of no legal significance. The trial court properly rejected this completely frivolous attempt by Redus to assert a defense wholly lacking in merit.
 {¶ 21} Appellant's fourth assignment of error is overruled.
III. Liberty's Motion to Quash
 {¶ 22} Redus sought to depose Liberty's counsel with respect to the circumstances surrounding the transfer of the $160,000 loan from the FDIC to Liberty and the trial court granted Liberty's motion to quash the subpoena. Redus argues that the trial court erred in quashing the subpoena.
 {¶ 23} We review a trial court's discovery rulings under an abuse of discretion standard. Tracy v. Merrell Dow Pharmaceuticals (1991),58 Ohio St.3d 147. The trial court quashed the subpoena on the basis of *Page 11 
Civ. R. 45(C)(3)(b), finding that it required disclosure of privileged matter. We find no abuse of discretion in the trial court's ruling, as the subpoena sought discovery of communications between Liberty's counsel and his client, obviously privileged information. Redus could have sought the same information from the FDIC, but did not do so. Accordingly, we find no abuse of discretion.
 {¶ 24} Appellant's fifth assignment of error is overruled.
IV. A Telephone Deposition
 {¶ 25} In her sixth assignment of error, Redus complains that the trial court abused its discretion in granting EMC's motion to allow the deposition of its representative to be taken by telephone.
 {¶ 26} Under Civ. R. 30(b)(6), "the court may upon motion order that a deposition be taken by telephone." EMC's representative was located in Dallas, Texas; we find no abuse of the trial court's discretion in ordering that the deposition be had by telephone. Further, Redus has not demonstrated any prejudice from this ruling. Although Redus argues on appeal that the cost of the telephone call would have been a "burdensome financial expense," she did not raise this argument in the trial court and thus waived the argument. Stores Realty Co. v. Cleveland Bd. ofBldg. Stds. Bldg. Appeals (1975), Ohio St.2d 41, 43.
 {¶ 27} Appellant's sixth assignment of error is overruled.
 Affirmed. *Page 12 
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
 APPENDIX
I. The trial court erred in not finding and ruling that Liberty Savings Bank did not purchase a $160,000 promissory note and mortgage from FDIC, as part of the mortgage loan sale transaction, on April 25, 1996.
II. The trial court erred in not finding and ruling that EMC Mortgage Corporation did not purchase a $160,000 promissory note and mortgage from Liberty Savings on March 28, 2002, and therefore, that appellee EMC has no standing to foreclose on the $160,000 promissory note and mortgage note executed by Garnette Redus on Augut 18, 1977.
III. The trial court erred in finding that substitute plaintiff's mortgage was duly filed with the Cuyahoga County Recorder's office on November 15, 1977.
IV. The trial court erred in denying Redus' motion to amend her complaint to add new affirmative defense that the alteration of the $160,000 promissory note is a discharge of defendant Garnette Redus from her obligation under the promissory note. *Page 13 
V. The trial court erred in granting the motion of plaintiff Liberty Savings Bank to quash defendant Redus' subpoena duces tecum to take the deposition of attorney James Sassano.
VI. The trial court erred in granting the motion of EMC Mortgage Corporation requiring defendant Redus to conduct the deposition of EMC designated representative by telephone.
VII. The trial court erred in not finding and ruling that Liberty Savings Bank and EMC Mortgage Corporation were not the holder of the $160,000 promissory note and mortgage note executed by defendant Garnette Redus.
VIII. The trial court erred in not finding and ruling that Liberty and EMC's lawsuit for foreclosure on the $160,000 promissory note and mortage deed is an abuse of process. *Page 1