[Cite as *Harris Rd. Dev. Co., L.L.C. v. Hilliard Partnership, L.L.C.*, 2026-Ohio-1602.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| HARRIS ROAD DEVELOPMENT CO., LLC | C.A. No.    25CA012272 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| HILLIARD PARTNERSHIP, LLC | CASE No.    23CV209422 |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: May 4, 2026

SUTTON, Judge.

{¶1} Defendant-Appellant Hilliard Partnership, LLC ("Hilliard Partnership") appeals the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of Plaintiff-Appellee Harris Road Development Co., LLC ("Harris Road"). For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} This appeal arises from a residential subdivision development project in Lorain County, Ohio called Grande Esplanade. On or about September 26, 2018, Hilliard Partnership, the developer of the subdivision project, entered into an acquisition loan agreement with Harris Road. Pursuant to that agreement, Harris Road loaned the sum of $2,250,000.00 to Hilliard Partnership so Hilliard Partnership could acquire the real property for the project. The funds were to be repaid with interest by May 31, 2023, or within a ten-day grace period thereafter. The

base rate of interest in the agreement was 11% from September 26, 2018, with a default rate of an additional 5%. The initial maturity date of May 31, 2023, was subject to a possible one-year extension if certain conditions precedent were met. These conditions were: (i) Hilliard Partnership provides written notice to Harris Road at least 30 days prior to the initial maturity date of its election to extend the initial maturity date; (ii) no event of default under the agreement has occurred; (iii) completion of construction of all required items to render the sublots salable as buildable sublots has occurred; (iv) no less than 40 of the sublots have been sold; and (v) Hilliard Partnership has paid to Harris Road the required extension fee.

{¶3} Separately, but also in connection with the Grande Esplanade project, Hilliard Lending, LLC ("Hilliard Lending") entered into a development loan agreement with H-9, LLC ("H-9"), guaranteed by Hilliard Partnership, in which Hilliard Lending would loan H-9 up to $2,500,000.00 for the development of the Grande Esplanade project. The development loan agreement also contained an option to extend the initial maturity date by one year. The development loan is the subject of a separate appeal pending in this Court.

{¶4} The development project stalled, and Hilliard Partnership did not repay the acquisition loan funds by May 31, 2023. Without meeting the conditions precedent, but prior to the initial maturity date of the loan, H-9 and Hilliard Partnership attempted to exercise the options to extend the initial maturity dates of both the acquisition loan and development loan by one year by sending a letter to Harris Road and Hilliard Lending. The letter did not indicate that all of the conditions precedent to exercising the extension option in the acquisition loan agreement were met. On May 15, 2023, a letter signed by Keith Vanderburg, the President of Hilliard Lending, was sent to Hilliard Partnership and H-9 on behalf of both Harris Road and Hilliard Lending rejecting the claimed extensions of both loans. Mr. Vanderburg informed Hilliard Partnership that

the conditions for the extension of the initial maturity date of the acquisition loan had not been met.

{¶5}     On June 30, 2023, Harris Road filed a complaint against Hilliard Partnership in the Lorain County Court of Common Pleas for breach of contract, seeking $2,250,000.00 plus contractual interest.  The complaint alleged: (1) Harris Road and Hilliard Partnership entered into an acquisition loan agreement whereby Harris Road agreed to loan Hilliard Partnership $2,500,000.00 to be used "only for the purchase certain undeveloped real property in and around the city of Avon," in Lorain County, Ohio; (2) Harris Road loaned Hilliard Partnership the sum of $2,250,000.00; (3) Harris Road obtained a valid second lien mortgage[1] on the subject property; (4) the acquisition loan agreement required all funds loaned by Harris Road to Hilliard Partnership be repaid  in full, with interest, on or before May 31, 2023, subject to a possible one-year extension; (5) the loan period was not extended; and (6) Hilliard Partnership failed to repay the loan and accrued interest.

{¶6}     Hilliard Partnership answered the complaint, admitting it entered the forementioned acquisition loan agreement with Harris Road, and admitting Harris Road loaned it $2,250,000.00, but denied the remaining allegations in the complaint.  Hilliard Partnership also counterclaimed against Harris Road for breach of contract, breach of fiduciary duty, anticipatory breach of contract, "[a]ctive-[c]onstructive [f]raud," negligent misrepresentation, and abuse of process, seeking "[e]quitable [r]elief [r]eformation" of the agreement and demanding an "accounting."

{¶7}     Harris Road filed a motion for summary judgment on its complaint against Hilliard Partnership and on Hilliard Partnership's counterclaims.  The trial court granted Harris Road's motion for summary judgment in its entirety and entered judgment in favor of Harris Road on its

---

[1] Hilliard Lending holds the first mortgage.

complaint and on Hilliard Partnership's counterclaims. The trial court granted judgment in favor of Harris Road and against Hilliard Partnership in the amount of $4,364,177.53.

{¶8} Hilliard Partnership has appealed, raising one assignment of error for our consideration.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED REGARDING THE PARTIES' PERFORMANCE, MODIFICATION, AND ENFORCEMENT OF THE LOAN ACQUISITION AGREEMENT.**

{¶9} In its sole assignment of error, Hilliard Partnership argues the trial court erred in granting summary judgment in favor of Harris Road, maintaining there remain genuine issues of material fact precluding summary judgment.

{¶10} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record

of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id.* at 293. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶11} Hilliard Partnership does not dispute that the conditions precedent for an extension of the initial maturity date of the acquisition loan have not been met, but makes numerous arguments in support of its claim that it was nonetheless entitled to a one-year extension of the initial maturity date. Hilliard Partnership's arguments, whether set forth by Hilliard Partnership as defenses or counterclaims, boil down to: Harris Road breached the terms of the acquisition loan agreement and duties owed to Hilliard Partnership; and Harris Road, by its actions or inactions, modified the acquisition loan agreement and waived the conditions precedent to an extension of the initial maturity date.

**Notice**

{¶12} Hilliard Partnership argues Harris Road breached the acquisition loan agreement by not providing written notice to Hilliard Partnership of the default. In response, Harris Road points to Article 8 of the acquisition loan agreement, which provides in part:

> 8.1 Events of Default. The occurrence of any one or more of the following events shall constitute an Event of Default (only after any applicable grace period has ended without cure) hereunder:
>
> (a) <u>Payment Default</u>. If Borrower shall fail to make any payment of principal or interest on the Subordinate Note within (10) days of when the same shall become due and payable, whether at stated maturity, upon expiration of the Loan Period, by declaration, upon acceleration, or otherwise.

Section 8.1 of the acquisition loan agreement goes on to provide that written notice is required in the event of a default other than a payment default. Section 8.2 of the acquisition loan agreement provides in the event of a default, Harris Road may declare the unpaid balance of the loan to be due and payable "without further presentation, protest, or further demand or notice of any kind[.]" Here, Hilliard Partnership defaulted on the acquisition loan agreement by defaulting on payment. Although written notice was not required under the terms of the acquisition loan agreement, Harris Road's attorney sent written notice to Hilliard Partnership in November 2023 demanding payment within 30 days.

{¶13} There is no genuine issue of material fact that the acquisition loan agreement did not require written notice to Hilliard Partnership of a payment default, and even if it did, Harris Road provided written notice to Hilliard Partnership. Harris Road did not breach a notice requirement in the acquisition loan agreement.

**Extension Option**

{¶14} Hilliard Partnership claims its obligation to repay the acquisition loan was properly extended under the terms of the agreement and therefore it did not breach the agreement by failing to pay back the loan by the initial maturity date. The agreement states in relevant part:

> The principal amount of Two Million Two Hundred Fifty Thousand and No/100 ($2,250,000.00), or such lesser amount as may be the balance of the Loan outstanding (as reduced by principal payments made from time to time hereunder)[.] . . . All principal and any accrued and unpaid interest shall be due and payable not[] later than May 31, 2023 (the "Initial Maturity Date") provided, however, that the Borrower may extend the Initial Maturity Date one (1) year (the "Permanent Maturity Date") (the applicable date then in effect is referred to as the "Maturity Date" upon satisfaction of the following conditions precedent (the "Extension Option"): (i) Borrower provides written notice to Lender at least thirty (30) days, but no more than ninety (90) days prior to the Initial Maturity Date of its election to extend the Initial Maturity Date; (ii) no Event of Default has occurred and is continuing hereunder; (iii) completion of construction of all required items to render the Sublots on the Mortgage[d] Property salable as buildable sublots has occurred; (iv) no less than forty (40) of the sublots on the Mortgaged Property have

been sold; and (v) Borrower has paid to Lender an extension fee equal to seventy-five (75) basis points (0.75%) multiplied by the then-outstanding principal balance of the Loan.

**{¶15}** Hilliard Partnership's attorney sent Harris Road and Hilliard Lending a letter dated May 1, 2023, claiming to elect the one-year extension of the initial maturity date of both the development loan and the acquisition loan. The letter stated:

> By and through the undersigned attorney and agent, H-9, LLC and Hilliard Partnership, LLC do hereby elect pursuant to the Senior Development Loan Agreement and the Acquisition Loan Agreement to extend the Initial Maturity Date for one year with the reservation of any and all rights and without prejudice.

Notably, the letter did not state that all of the conditions required for an extension of the initial maturity date had been met.

**{¶16}** On May 15, 2023, Keith Vanderburg, President of Hilliard Lending, which loaned the development funds to Hilliard Partnership, rejected the claimed extension on behalf of both Harris Road and Hilliard Lending. Mr. Vanderburg explained that Hilliard Partnership was not entitled to an extension of the acquisition loan initial maturity date until the conditions precedent in the acquisition loan agreement had been met.[2]

**{¶17}** Hilliard Partnership argues Mr. Vanderburg had no authority to reject its claimed exercise of the option to extend the initial maturity of the date of the acquisition loan. However, under the terms of the loan acquisition agreement, the option was available only when the conditions precedent set forth in the agreement were met. Hilliard Partnership's May 1, 2023 letter to Harris Road and Hilliard Lending did not address the conditions precedent at all. Harris Road

---

[2] As of April 15, 2025, the date of the trial court's Judgment Entry granting summary judgment in favor of Harris Road, Hilliard Partnership had made no payment on the acquisition loan.

submitted evidence in connection with its motion for summary judgment that all of the required conditions had not been met.

{¶18}   Hilliard Partnership also argues it relied on Harris Road's silence or acquiescence to the exercise of the extension option and rendered some "performance" as a result.   Hilliard Partnership does not state what performance it rendered in reliance on Harris Road's alleged silent acquiescence of the extension.     Further, there could be no mistake that Harris Road rejected Hilliard Partnership's claimed acceptance of the one-year option when one month after the initial maturity date, Harris Road filed its complaint for breach of the acquisition loan agreement against Hilliard Partnership.

{¶19}   In spite of its failure to fulfill the conditions required to exercise the option to extend the initial maturity date, Hilliard Partnership argues Harris Road modified or waived by conduct or inaction the conditions precedent for extension.   In support of this argument, Hilliard Partnership submitted the affidavits of Gerald Phillips, counsel for Hilliard Partnership, and Peter Restivo, the Manager-Member of Hilliard Partnership in opposition to Harris Roads' motion for summary judgment.  The affidavits generally referred to oral waivers, actions, and conduct on the part of Harris Road and its agents but offered no specifics.  For example, one averment in an affidavit stated, "the actions and conduct of [Harris Road] and its general manager John Kedzior indicated modifications involving such matters [as] the performance standards regarding the sublots improvement extensions maturity date."  Another averment stated, "oral waivers involve such matters [as] the performance standards regarding the sublots improvement, extensions, maturity date."  In analyzing Hilliard Partnership's evidence, the trial court stated:

> [Hilliard Partnership] alleges but brings forward no evidence of any modification or waiver by [Harris Road] of the Agreement's terms whether based on [Harris Road's] conduct or its statements.

. . .

The [evidence is] insufficient to establish [Harris Road] or any of its agents – by word or deed – waived or modified any term of the Agreement. Therefore, on the undisputed evidence before the [c]ourt, the stated terms of the Agreement remained unchanged from its execution on September 26, 2018.

**{¶20}** Hilliard Partnership did not provide any evidence of specific statements or conduct by Harris Road indicating it was waiving any term of the acquisition loan agreement. Harris Road, however, did submit evidence that it did not modify or waive any term in the acquisition loan agreement.

**{¶21}** Hilliard Partnership's purported evidence that Harris Road agreed to extend the initial maturity date is that Harris Road met and communicated with Hilliard Partnership multiple times concerning the project, and Harris Road's actions, or statements made in connection with those actions, somehow worked as waivers of the acquisition loan agreement's clear terms. However, upon review, we cannot conclude that Harris Roads' statements or actions show Harris Road waived any terms of the agreement. To the contrary, Harris Road, as the lender of significant funds to Hilliard Partnership, was understandably interested in the project's status and in recouping the loaned funds. Some of the statements Hilliard Partnership points to were clearly in connection with the development loan funds, not the acquisition loan funds loaned by Harris Road to Hilliard Partnership. No statement or action by Harris Road could reasonably be interpreted to mean Harris Road was waiving or modifying the conditions precedent to an extension of the initial maturity date.

**{¶22}** There is no genuine issue of material fact concerning whether Harris Road waived or modified any term of the acquisition loan agreement, including the conditions precedent to the exercise of the one-year extension option. It did not waive or modify any term.

**Acceleration**

{¶23} Hilliard Partnership also claims Harris Road improperly accelerated the loan in violation of the terms of the loan agreement. The stated loan maturity date and the date when payment was due as set forth in the acquisition loan agreement was May 31, 2023, unless the initial maturity date was properly and validly extended, which it was not. Hilliard Partnership did not point to any evidence that Harris Road demanded payment before the initial maturity date of the loan. The initial maturity date was not validly extended by the parties, therefore repayment of the loan funds remained due on May 31, 2023. Accordingly, there is no genuine issue of material fact concerning whether Harris Road improperly accelerated the acquisition loan. It did not.

**Fiduciary Duty**

{¶24} Hilliard Partnership also argues Harris Road breached a fiduciary duty it owed to Hilliard Partnership. Harris Road responds it had no such fiduciary relationship with Hilliard Partnership and it was merely the lender under the acquisition loan agreement. In support of its position, Harris Road points to Section 10.18 of the acquisition loan agreement in support of its position:

> No Fiduciary Obligations. The relationship between Borrower [Hilliard Partnership] and Lender [Harris Road] with respect to the Loan Documents is and shall be solely that of a debtor and creditor, respectively, and lender has no fiduciary obligation toward borrower with respect to any such documents or the transactions contemplated thereby.

{¶25} Nevertheless, Hilliard Partnership argues Harris Road's conduct throughout the term of the acquisition loan agreement and the course of dealings between the parties created a fiduciary relationship. We acknowledge the Supreme Court of Ohio has stated that the characterization of the parties' relationship in a contract is not controlling and can be created by the conduct of the parties. *Hope Academy Broadway Campus v. White Hat Mgt.*, L.L.C., 2015-

Ohio-3716, ¶ 41 and ¶ 46. But here, we determine that Hilliard Partnership has not pointed to any evidence that a fiduciary relationship was created between itself and Harris Road.

{¶26} A fiduciary relationship is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Emp. of Pratt,* 40 Ohio St.2d 107, 115 (1974). In determining whether a fiduciary relationship has been created, the main question is whether Harris Road agreed to act primarily for the benefit of Hilliard Partnership in matters connected with the development project. *See Strock v. Pressnell,* 38 Ohio St.3d 207, 216 (1988). The relationship between a debtor and creditor without more is not a fiduciary relationship. A fiduciary relationship may be created but this is done only when both parties understand that a special trust or confidence has been reposed. *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St. 2d 282, 286 (1979). The rendering of advice by a creditor does not transform the business relationship into a fiduciary relationship. *Id.* at 287.

{¶27} Hilliard Partnership has not pointed to any evidence that the lender-debtor relationship here was transformed into a fiduciary relationship. Nor does it point to any evidence that even if there was a fiduciary relationship that Harris Road somehow breached a fiduciary duty owed to Hilliard Partnership. Hilliard Partnership has not provided evidence that Harris Road did anything or failed to do something in violation of a fiduciary duty that prevented Hilliard Partnership from acquiring or developing the property, or that prevented Hilliard Partnership from paying Harris Road the monies it owed.

{¶28} Therefore, there is no genuine issue of material fact and Harris Road neither owed nor breached any fiduciary duty owed to Hilliard Partnership.

**Good Faith and Fair Dealing**

{¶29} Hilliard Partnership also argues Harris Road breached its duties of good faith and fair dealing. The Ohio Supreme Court has stated, "[i]n addition to a contract's express terms, every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 42. A party does not breach its implied duty of good faith and fair dealing, however, "merely by seeking to enforce the contract or by acting as permitted by its express terms." *Id.* at ¶ 43; *Simecek v. Simecek*, 2024-Ohio-2471, ¶ 26 (9th Dist.). There is no violation of the implied duty of good faith and fair dealing unless there is a breach of a specific obligation imposed by the contract. *Id.*, quoting *Lucarell* at ¶ 43. Here, Harris Road loaned Hilliard Partnership funds to acquire property for development and Hilliard Partnership agreed to repay those funds with interest, which it has not done. Hilliard Partnership has not pointed to any evidence that Harris Road breached any specific obligation of the loan agreement or any duty of good faith and fair dealing.

**Fraud, Misrepresentation, and Abuse of Process**

{¶30} Hilliard Partnership has also raised issues of fraud, misrepresentation, and abuse of process. Hilliard Partnership has not submitted nor pointed to any evidence that Harris Road engaged in any fraud or misrepresentation either in the formation of the acquisition loan agreement or during the pendency of the agreement. Hilliard Partnership argues statements by Keith Vanderburg concerning when the next loan advance would be made and the project's timeline and vendor invoice schedule demonstrate a misrepresentation by Harris Road that it would extend the initial maturity date. However, Hilliard Partnership has not shown these statements were at all connected to the acquisition loan funds. Instead, these statements appear to concern the development loan funds, which are not a part of this case. Indeed, several of the exhibits attached

to Hilliard Partnership's brief in opposition to Harris Road's motion for summary judgment have to do with the development loan and not the acquisition loan.

{¶31} Hilliard Partnership also claims Harris Road's filing of this case was an abuse of process designed to acquire the subject real property. "The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994), paragraph one syllabus. "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court itself is powerless to order." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 271 (1996). Hilliard Partnership has provided no evidence that Harris Road, a lender which holds a second mortgage on the property and which is not a developer, had any other motive for filing the complaint apart from recovering the funds it loaned to Hilliard Partnership in 2018.

**Impossibility and Frustration of Purpose**

{¶32} Hilliard Partnership also alleges it was impossible to repay the borrowed funds due to COVID-19, but has pointed to no evidence in its appellate brief that the pandemic was a cause of the project's failure. The only evidence Hilliard Partnership points to are the orders from the State of Ohio concerning COVID-19, but does not connect those orders to anything concerning the Grande Esplanade project. Indeed, Hilliard Partnership admits that disputes with third parties, who are not parties to the acquisition loan agreement or parties to this case, have caused significant delays in completing the Grande Esplanade project. Hilliard Partnership also claims that actions of Harris Road somehow prevented Hilliard Partnership from repaying the loan but has not pointed

to any evidence in its brief showing any action or inaction on the part of Harris Road prevented Hilliard Partnership from fulfilling its obligations under the acquisition loan agreement, which was to repay the loan plus contractual interest, or from completing the development project.

**Reformation and Accounting**

{¶33} As for Hilliard Partnership's claims for reformation of the acquisition loan agreement and for an accounting due to its claim that interest was improperly calculated, again, Hilliard Partnership offered no evidence to support it was entitled to have the acquisition loan agreement reformed or to counter Harris Road's evidence that interest was properly calculated.

**Conclusion**

{¶34} Hilliard Partnership has pointed to no evidence that Harris Road agreed to extend the initial maturity date of the acquisition loan agreement or to forego enforcement of the agreement, nor has it pointed to evidence that Harris Road breached any duty owed to Hilliard Partnership or engaged in any fraud or abuse of process. Hilliard Partnership borrowed funds from Harris Road which it agreed to pay back by a certain date, with interest. Harris Road loaned the funds to Hilliard Partnership, thus fulfilling its obligation pursuant to the acquisition loan agreement. Hilliard Partnership did not repay the funds by the initial maturity date and did not fulfill the conditions for extending the initial maturity date, which were not waived by Harris Road.

{¶35} We have reviewed the record in this case de novo and determine the trial court did not err in finding there was no genuine issue of material fact that Hilliard Partnership breached the acquisition loan agreement by not repaying the loan funds by the initial maturity date. Further, we determine the trial court did not err in finding there was no genuine issue of material fact concerning the defenses and counterclaims of Hilliard Partnership and that Harris Road was entitled to judgment as a matter of law. Simply put, there is no genuine issue of material fact that

Hilliard Partnership breached the acquisition loan agreement and Harris Road did not breach the agreement.

{¶36} Accordingly, Hilliard Partnership's assignment of error is overruled.

III.

{¶37} For the forgoing reasons, Hilliard Partnership's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
STEVENSON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

PATRICK J. THOMAS, Attorney at Law, for Appellant.

ROY J. SCHECHTER, Attorney at Law, for Appellee.